IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD CHARLES, a.k.a. Jeanky Georges   *
        Petitioner,
     v.                          *    CIVIL ACTION NO. WMN-05-2546

STEVEN R. WILLIAMS           *
        Respondent.
                                 ***

**MEMORANDUM**

Petitioner Richard Charles is an inadmissible alien from Haiti who is presently confined at the Dorchester County Detention Center in Cambridge, Maryland. On September 12, 2005, the Clerk received for filing his 28 U.S.C. § 2241 petition for writ of habeas corpus relief, seeking release from Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") custody. On October 26, 2005, Respondent filed a court-ordered response.[1]  Paper No. 4. Petitioner filed a rebuttal thereto. Paper No. 5. The Petition is ready for the court's consideration. Oral hearing is unnecessary. *See* Local Rule 105.6. (D. Md. 2004). For reasons to follow, the Petition shall be dismissed without prejudice.

Procedural History

Petitioner is a native and citizen of Haiti who entered the United States at Miami, Florida in 1989 as a stowaway. On November 22, 1995, he was served with notice charging him as being deportable from the United States as an alien who was excludable at the time of entry. Paper No. 4, Ex. A. According to Respondent, Petitioner was released from custody in June, 1996, pending his deportation proceeding. Petitioner and counsel appeared before the Immigration Court on March 19, 1997, and his hearing was rescheduled for June, 25, 1997. On June 25, 1997, however,

---

[1] Petitioner was directed to file the $5.00 habeas fee or an indigency motion. He filed a motion for leave to proceed in forma pauperis which, upon due consideration, shall be granted.

Petitioner failed to appear for his immigration hearing and was ordered deported in absentia by Immigration Judge Bruce M. Barrett.  Paper No. 4, Ex. A.

Petitioner was not taken back into ICE custody until February 8, 2005.  Respondent states that in May of 2005, a number of Haitian citizens were scheduled to be returned to Haiti on a Justice Prisoner Alien Transportation System ("JPATS") flight.   He alleges, however, that because the flight was already full, it was not possible to effect Petitioner's deportation at that time.  *Id*., Ex. B at Stokes Decl.

On July 13, 2005, Petitioner filed a counseled motion to re-open his in absentia deportation order.  *Id*.  The motion was denied on August 12, 2005, and an appeal of that decision remains pending before the Board of Immigration Appeals ("BIA").  *Id*.

Petitioner had been scheduled to be interviewed by a Haitian Consular Officer on July 25, 2005, in preparation for his repatriation  *Id*.  That interview was canceled by the Haitian Consulate and has not yet been rescheduled.  *Id*.   ICE Headquarters Detention and Removal Operations indicates that the Haitian Consulate in Washington, D.C. has temporarily suspended interviews until after the upcoming December, 2005 political elections in Haiti.  *Id*.  ICE officers are to file a request for travel documents directly with the Haitian Consulate.  *Id*.  On October 12, 2005, Petitioner's ICE Deportation Officer sent a complete travel document request package to the Haitian Consulate in Washington, D.C.  *Id*.   The status of that request has not been determined.  *Id*. Another travel document request package was forwarded to the ICE Miami, Florida field office for submission to the Haitian Consulate in Miami, it appearing that that office has had recent success in obtaining Haitian travel documents.

Petitioner's Deportation Officer, Maria Stokes, indicates that ICE has been successful in repatriating Haitian citizens to that country.  Paper No. 4, Ex. B at Stokes Decl.   In 2003, ICE

returned 1,021 aliens to Haiti; in 2004, ICE returned 766 aliens to Haiti; and thus far in fiscal year 2005, ICE has returned 987 aliens to Haiti. *Id*.

Analysis

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that Immigration and Naturalization Act, § 241(a)(6), 8 U.S.C. § 1231(a)(6), read in light of the due process protections to be afforded to aliens who have been admitted into the United States, generally permits the detention of such an alien under a final order of removal only for a period reasonably necessary to bring about that alien's removal from the United States. *See Zadvydas*, 533 U.S. at 701. It was concluded that the detention of such an alien beyond the statutory removal period, for up to six months after the removal order becomes final, is "presumptively reasonable." *Id.* After six months, if an alien can provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must rebut the alien's showing in order to continue the alien in detention.[2] *Id*. The 6-month rule announced in *Zadvydas* does not require the automatic release of detainees subject to deportation. Clearly, there must be evidence, such as the lack of a repatriation agreement with the detainee's native country, that removal is unlikely before a detainee's post-removal-order confinement is called into question. *See, e.g., Thai v. Ashcroft*, 366 F.3d 790, 792, 798 (9th Cir. 2004).

At present the court finds no substantive or procedural due process violation associated with Petitioner's continued post-removal-order detention. Petitioner came back into ICE custody in February of 2005. ICE was unable to repatriate him to Haiti on a JPATS flight in May, 2005, and scheduled him for an interview with Haitian authorities in July of 2005. That interview was canceled by the Haitian Consulate, but has not as of yet been rescheduled by Haitian officials. In

---

[2] The scope of *Zadvydas* has been broadened to afford the same due process protections to inadmissible aliens such as Petitioner. *See Clark v. Suarez-Martinez*, 125 S.Ct. 716, 722-23 (2005).

October of 2005, travel document packages were sent to the Haitian Consulate in Washington, D.C. and to the ICE field office in Miami for submission to the Haitian Consulate in that city. The court observes that ICE has been diligent in contacting the Haitian Consulate in attempting to obtain travel documents. At present, the delay in obtaining the travel document is attributable to the Haitian government's decision to suspend interviews until after its December 2005 election. Respondent indicates that there is no reason to believe that the repatriation of Haitians will not resume in the near future and maintains that ICE has been able to repatriate Haitian citizens with regularity in the recent past.[3] While Petitioner's rebuttal discusses the hardships he will experience if returned to Haiti, he has not successfully refuted the Respondent's claims to establish that there is no significant likelihood of his removal to Haiti in the reasonably foreseeable future.

## Conclusion

For the aforementioned reasons, the Petition shall be dismissed without prejudice. A separate Order follows.

Date: 11/17/05                              /s/
                                            William M. Nickerson
                                            Senior United States District Judge

---

[3] Petitioner was placed in deportation proceedings in 1996. Therefore, his case is subject to provisions which existed prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act. The court observes that even if ICE possessed a travel document from the Haitian Consulate, Petitioner cannot be deported because a statutory stay is in effect due to the filing of his motion to re-open and appeal to the BIA from the 1997 decision to deport in absentia. *See* former Immigration and Naturalization Act, § 242(B)(c)(3).